UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Damon Berry | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**    **Order GRANTING in Defendant's motion to dismiss without leave to amend.**

Before the Court is Defendant James River Insurance Company's ("Defendant") motion to dismiss Plaintiff North River Insurance Company's ("Plaintiff") complaint for failure to state a claim. *See generally* Dkt. #25 ("*Mot.*"). Plaintiff opposed the motion on July 7, 2023*, see generally* Dkt. #29 ("*Opp.*"), and Defendant replied on July 14, 2023*, see generally* Dkt. #31 ("*Reply*").

The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7 15. Having considered the moving, opposing, and reply papers, the Court **GRANTS** Defendant's motion to dismiss without leave to amend.

I.    Factual Background

This case is about a dispute between the parties over a $5 million settlement in a lawsuit against Shelter Island Apartments ("Shelter Island"). *See Complaint*, Dkt. #1 ("*Compl.*") ¶ 6.

A.    The Underlying Lawsuit Against Shelter Island

On May 25, 2017, Marcus Collins was tortured and killed inside a unit at the Shelter Island complex in Las Vegas, Nevada. *Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss*, Dkt. # 25 1 ("*Defendant's MPA*"), 3:10 25.

On March 7, 2019, Collins's estate filed a complaint in a Nevada state court against Shelter Island for negligence and wrongful death. *See generally Compl* ¶ 6*; Compl.*, Ex. A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

Shelter Island had a $1 million primary insurance policy with Defendant, who defended the claim. *Compl.* ¶ 7; *Defendant's MPA* 4:11  13.  Shelter Island also had a $10 million excess policy with Plaintiff.  *Compl.* ¶ 10.

On March 28, 2019, Collins's estate issued a $1 million settlement demand which Defendant denied. *Id.* ¶ 29.  In November 2021, Collins's estate reduced the demand to $875,000, which Defendant again denied.  *Id.* ¶ 24.  Defendant claims that Plaintiff and Shelter Island agreed with the decisions not to settle. *Defendant's MPA* 4:22  24.

In August 2022, Defendant's counsel "concluded that it would probably not be possible to obtain all the targeted-killing evidence they wanted." *Id.* 4:25  27.  Defendant also learned of a more recent murder in a Shelter Island common area, which gave rise to a suit similar to the one filed by Collins's estate. *Id.* 5:1  4.  Defendant discovered that in the other suit, Shelter Island's owner testified poorly at deposition and the case settled for the combined $11 million policy limits. *Id.* 5:1  4.  Due to this information, Defendant decided to make a $1 million settlement offer. *Id.* 5:5  6.  Plaintiff told Defendant not to make such an offer, fearing that it would lead to negotiations and a settlement requiring Plaintiff to pay out its excess policy coverage. *Id.* 5:6  8.  Ignoring Plaintiff's objections, Defendant made the $1 million offer to Collins's estate, and the case settled two months later for $5 million. *Id.* 5:9  11.  Defendant contributed its $1 million policy limit and Plaintiff contributed $4 million of its $10 million policy. *Id.* 5:11  13.

B.      The Equitable Subrogation Claim and Current Motion

On January 4, 2023, Plaintiff filed a complaint in this Court, contending that by settling the claim for $5 million, Defendant breached its duty to settle the underlying suit and the implied covenant of good faith and fair dealing. *Id.* ¶¶ 37  38.  Plaintiff therefore asserts a claim for equitable subrogation and contends that by virtue of its $4 million settlement payment, it is subrogated to the rights of Shelter Island against Defendant.

On June 26, 2023, Defendant moved to dismiss for failure to state a claim upon which relief may be granted, and on July 7, 2023, Plaintiff filed its opposition to the motion. *Mot.*; *Opp.*  Defendant filed its reply to the opposition on July 14, 2023. *Reply.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

### III.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

### IV.    Discussion

Defendant argues that Nevada law applies to this case and bars equitable subrogation claims between insurers when the underlying lawsuit settles within the insured's combined policy limits. *Defendant's MPA* 6:15, 7:1 4.

Plaintiff counters that California law applies, under which Plaintiff contends it has properly stated a claim for relief.

#### A.    Choice of Law

The Court first addresses the threshold issue of which state law applies. In determining the applicable state, "a court ordinarily must apply the choice-of-law rules of the State in which it sits." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981). California courts apply two choice-of-law tests in contract law: the statutory test set forth in California Civil Code § 1646, and the governmental interests test. *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007). Notwithstanding the historical "difference of opinion" in state courts, *see Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 n.6 (9th Cir. 1994), federal courts have developed a consensus that the specific legislative statement of § 1646 governs in contract matters. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020); *Channell Com.Corp. v. Wilmington Mach. Inc.*, No. ED CV 14-2240 DMG (DTBx), 2016 WL 7638180, at *7 (C.D. Cal. Jun. 17, 2016) (collecting cases). This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

is consistent with decisions by California Courts of Appeal. *See Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1443 (2007); *Gitano Grp., Inc. v. Kemper Grp.*, 26 Cal. App. 4th 49, 56 n.4 (1994).

> i.      *California Civil Code § 1646*

Under § 1646, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." *Id.* An insurance policy is a contract, Cal. Ins. Code § 22, and state and federal courts have applied § 1646 to determine how insurance contracts should be construed. *See, e.g.*, *Frontier Oil Corp.*, 153 Cal. App. 4th at 1460 61; *Gitano Grp.*, 26 Cal. App. 4th at 56 n.4; *James River Ins. Co. v. Medolac Labs.*, 290 F. Supp. 3d 956, 963 64 (C.D. Cal. Feb. 22, 2018). Section 1646 only governs the interpretation of contractual terms. All other issues are subject to the governmental interest analysis. *Glob. Commodities*, 972 F.3d at 1111.

A choice-of-law analysis is only necessary where there is a material conflict in the laws of the two states. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 20 (2001) ("The fact that two or more states are involved does not in itself indicate there is a conflict of laws problem . . . if the relevant laws of each state are identical, there is no problem[.]").

Plaintiff argues that there is no conflict between the applicable laws, and it has stated a claim for equitable subrogation under the laws of either state. *Opp.* 5:1 5. Defendant counters that, in contrast to California law, the Nevada Supreme Court has decided that an excess insurer does not have a claim for equitable subrogation against a primary insurer where the underlying case settles within the combined policy limits. While the two relevant Nevada cases are persuasive, rather than binding,[1] they nonetheless represent the Nevada Supreme Court's position on the issues relevant here, which a federal court sitting in diversity must consider in approximating state law as closely as possible. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). Because California does not have precedent mirroring the Nevada Supreme Court cases, the Court agrees with Defendant that the Nevada Supreme Court's recent decisions create material conflicts in the states' laws. *See, e.g.*, *Ace Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 2 Cal. App. 5th 159, 170 (2016).

---

[1] The opinions are unpublished and are therefore not binding. *See* Nev. R. App. P. 36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

Since there is a conflict, the Court applies § 1646, which provides that the applicable law is the law of the place of performance, or, if there is not a specified place of performance, the law of the place where the contract was made. "A contract indicates a place of performance within the meaning of [§] 1646 if the contract expressly specifies a place of performance or if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." *Frontier Oil Corp.*, 153 Cal. App. 4th at 1443. In *Frontier Oil*, the court held that "California, as the location of the risk insured under the policy, was the state where [the defendant] would be obligated to perform its defense obligations under the policy, and the contracting parties knew this at the time the policy was issued." *Id.*; *see also Welles v. Turner Ent.*, 503 F.3d 728, 738 (9th Cir. 2007) ("When the contract does not expressly specify a place of performance . . . the place of performance is the jurisdiction in which the circumstances indicate the parties expected or intended the contract to be performed."). Here, the insurance contract does not state where it is to be performed, and the policy covers seven properties    six in Nevada, including Shelter Island, and one in California.

Similar to *Frontier Oil*, here, the parties knew at the time that the policy was issued that the locations of risk were Nevada and California, and that Plaintiff would be obligated to provide coverage for properties in either state. Consequently, Plaintiff was aware: (1) that the majority of the risk insured was in Nevada; (2) that risk pertaining to Shelter Island was in Nevada, and (3) that it was obligated to provide coverage for Shelter Island. *See generally Compl.*, Ex. A. Therefore, the place of performance for the portion of the contract pertaining to this action is Nevada. Since the risk under the *Frontier Oil* insurance policy existed in only one state, rather than in two as it does here, the Court proceeds to assess the second prong of § 1646.

Under §1646, an insurance contract is "made" in the place of acceptance. *Ameron Int'l Corp. v. Am. Home Assur. Co.*, 2011 WL 2261195, at *5 (C.D. Cal. June 6, 2011). Here, it is unclear where the contract was made. Plaintiff argues that the policy was made in either California or Arizona because it was issued to a California citizen and was therefore presumably delivered either to the insured in California or to their insurance agent in Arizona. *Opp.* 4:3  6. Defendant counters that neither the complaint nor the policy support finding that the last act of acceptance occurred in California, Arizona, or other relevant states.[2] *Reply* 3:23  4:3. The Court agrees that there is no clear evidence of the location of acceptance. Accordingly, the second prong of § 1646 is neutral under these circumstances, and the Court considers the governmental interests test.

---

[2] Namely, Nevada, where there are six insureds, or Virginia, Plaintiff's location. *Reply* 3:23  4:3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

### ii.    *Governmental Interests*

"When there is no advance agreement on applicable law, but the action involves the claims of residents from outside California, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law." *Wash. Mut. Bank*, 24 Cal. 4th at 915.  Under the governmental interests test, the following must be shown: (1) there is a material conflict between the laws of California and Nevada; (2) both states have a legitimate interest in having their law apply to this dispute; and (3) one of the state's interests will be more significantly impaired than the other's. *Wash. Mut. Bank*, 24 Cal.4th at 919  920.

As addressed earlier, there is a material conflict between the laws of California and Nevada.  Despite materially different laws, "there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied." *Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 580 (1974); *see also Wash. Mut. Bank*, 24 Cal.4th at 920 ("[T]he trial court may properly find California law applicable without proceeding to the third step in the analysis if the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied.").  Only if the trial court determines that "the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." *Wash. Mut. Bank*, 24 Cal.4th at 920.

Here, it is unclear that California has any interest in having its law applied.  Plaintiff contends that "California has a legitimate interest in whether claims covered under insurance policies issued [to] California insureds are properly handled and settled by their primary insurers." *Opp.* 4:16  18.  But the property at issue is not necessarily a "California insured" under the "multiple risk approach" adopted by California courts. *Medina v. Harco Nat'l Ins. Co.*, No. CV1505595BROMRWX, 2016 WL 7647680, at *8 (C.D. Cal. July 29, 2016) (applying the "multiple risk approach" when analyzing the governmental interests test).

"Where a multiple risk policy insures against risks located in several states, it is likely that the courts will view the transaction as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principal location of the particular risk involved." *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 646 (1993) (citation omitted).  This "multiple risk approach" applies in this case as the insured properties are located in both Nevada and California.  Thus, while one of the insured properties was in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

California, Nevada is where the "particular risk involved" occurred, giving it a greater interest than California. *Medina*, 2016 WL 7647680, at *8; *see also Del Real v. U.S. Fire Ins. Crum & Forster*, 64 F. Supp. 2d 958, 961 (E.D. Cal. 1998), *aff'd sub nom. Del Real v. U.S. Fire Ins. Co.*, 188 F.3d 512 (9th Cir. 1999) (applying California law under the multiple risk approach when accident occurred in California).

Further, the underlying lawsuit resulting in the settlement that is the subject of this dispute occurred in Nevada, giving Nevada a significant interest in the underlying litigation and any subsequent litigation arising from it. *See Compl.* ¶ 6, Dkt. # 6; *see also Stonewall Surplus Lines Ins. Co.*, 14 Cal. App. 4th at 649 (finding California had a greater interest than a foreign state when "the liability imposed grew out of severe injury suffered by a California resident while he was in California and caused by . . . activities which occurred exclusively in this state."). Moreover, "[i]n the context of a bad faith failure to settle, the dispute arises entirely from the insurance company's alleged misconduct in the underlying litigation." *Medina*, 2016 WL 7647680, at *9, n.11. Therefore, "the location of the underlying litigation . . . should bear heav[y] consideration." *Id.* Indeed, nothing shows that California has an interest in having its laws applied in this action. Conversely, the nature of the policy, Shelter Island's location, and the location of the underlying litigation support finding Nevada has an interest in applying its laws here. Thus, the Court applies Nevada substantive law to this dispute.

  B.  <u>Rule 12(b)(6): Equitable Subrogation</u>

Subrogation applies when one party, the subrogee, involuntarily pays the obligation or loss of another, the subrogor, for which a third party, wrongdoer, or otherwise is eventually found to bear responsibility. *See AT & T Techs., Inc. v. Reid*, 109 Nev. 592, 595-96 (1993). Subrogation creates derivative rights and requires an underlying independent basis upon which the subrogor could have recovered the payment as if the subrogee had never stepped in to assume the loss. *See Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368 (2011).

The Supreme Court of Nevada has "recognized the doctrine of equitable subrogation in a variety of situations." *In re Fontainebleau Las Vegas Holdings*, 289 P.3d 1199, 1209 n.8 (Nev. 2012) (en banc). But it has not issued a binding decision addressing whether it would recognize equitable subrogation in the context of two insurance companies and, if so, what an insurer claiming subrogation would have to prove.

As a general matter, "[t]he task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

without discrimination because of the federal forum." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (quoting *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980)). If the state's highest appellate court has not decided the question presented, then the Court must predict how the state's highest court would decide the question. *Id.*

In December 2022, the Nevada Supreme Court decided *St. Paul Fire & Marine Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania*.[3] 521 P.3d 418, 2022 WL 17543613 (Nev. 2022). There, the court declined to recognize equitable subrogation between Cosmopolitan and Marquee's equal-level excess insurers where the settlement amount for the underlying litigation did not exceed any policy limits. *Id.* at *2. The court reasoned that the "duty to settle" requires the insurer to protect the insured from "unreasonable exposure to a judgment in excess of the" insured's liability coverage limit to the extent an opportunity to settle arises. *Id.* (quoting *Restatement of Liability Insurance* § 24 cmt. b (Am. Law Inst. 2019)). Thus, "exhaustion of the policy limits prior to an excess judgment necessarily protects the insured from the harm that the duties purport to avoid." *Id.* And since the insurers settled the insured's liability before excess-judgment exposure, the insured did not suffer damages and did not have claims to subrogate to the plaintiff, Cosmopolitan's excess insurer. *Id.* Therefore, the court affirmed summary judgment in favor of the defendant, Marquee's excess insurer. *Id.* at 5. Shortly thereafter, the Nevada Supreme Court granted a writ of mandamus in a related action. *Aspen Specialty Ins. Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 528 P.3d 287, 2023 WL 3185274 (Nev. 2023). The plaintiff in *St. Paul*, Cosmopolitan's excess insurer, brought actions

---

[3] Marquee nightclub ("Marquee") operates inside the Cosmopolitan hotel and casino ("Cosmopolitan"). *St. Paul Fire & Marine Insurance Company v. National Union Fire Insurance Company of Pittsburgh, PA.*, 521 P.3d 418, 2022 WL 17543613, at *1 (Nev. 2022). Marquee's primary insurer is Aspen Specialty Insurance, and its excess insurer is National Union Fire Insurance Company. *Aspen Specialty Insurance Company v. Eighth Judicial District Court in and for County of Clark*, 528 P.3d 287, 2023 WL 3185274, at *1 (Nev., 2023). Both of Marquee's policies with these insurers specify that Cosmopolitan is an additional insured. *Id.* Cosmopolitan also has a primary insurer, Zurich American Insurance Company, and an excess insurer, St. Paul Fire & Marine Insurance Company. *Id.* A couple sued Marquee and Cosmopolitan for alleged injuries stemming from a nightclub incident, and a jury found the defendants jointly and severally liable for $160.5 million in compensatory damages. *Id.* All four insurance companies collectively paid confidential settlement amounts that exhausted their respective policy limits prior to the punitive-damages stage. *Id.* Subsequently, Cosmopolitan's insurers, Zurich and St. Paul, filed separate equitable subrogation claims against each of Marquee's insurers.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

against Marquee's primary and excess insurers. *Id.* at *1. Both defendants moved for summary judgment. *Id.* at *2. The district court granted the Marquee excess insurer's motion, which the Nevada Supreme Court affirmed in *St. Paul*. *Id.* But before the Nevada Supreme Court issued its decision in *St. Paul*, the district court denied the Marquee primary insurer's motion. *Id.* at 2, n.2. The Marquee primary insurer filed a renewed motion for summary judgment, which the district court denied, prompting the primary insurer to file a writ. *Id.* at *1. In addressing the Marquee primary insurer's writ, the court again commented that the insured did not suffer damages since all four insurers settled the litigation without exceeding the collective policy limits. *Id.* at *2. The district court was therefore bound by *St. Paul*, and the court instructed the district court to grant summary judgment in favor of Marquee's primary insurer. *Id.*

Prior to these cases, a Nevada district court decided a motion to dismiss a claim for equitable subrogation in another related case where Cosmopolitan's primary insurer sued Marquee's primary insurer. The district court stated the elements of equitable subrogation, one of which requires that "the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends." *Zurich Am. Ins. Co. v. Aspen Specialty Ins. Co.*, No. 220CV01374APGDJA, 2021 WL 3489713, at *3 (D. Nev. Aug. 6, 2021) (quoting *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1292 (Cal. Ct. App. 1998) (emphasis omitted)).[4]

While the Supreme Court of Nevada addressed motions for summary judgment in *St. Paul* and *Aspen*, rather than motions to dismiss, the Court is nonetheless required to "predict how the state high court would resolve" the novel issue before it. In *St. Paul* and *Aspen*, the Nevada Supreme Court repeated that the settlement of claims within policy limits meant the plaintiffs did not suffer damages, and therefore their equitable subrogation claims failed. *St. Paul Fire & Marine Insurance Company*, 2022 WL 17543613, at *2; *Aspen Specialty Ins. Co.*, 2023 WL

---

[4] The district court "look[ed] to California law for guidance because the Supreme Court of Nevada often does that when deciding an issue of first impression." *Zurich Am. Ins. Co. v. Aspen Specialty Ins. Co.*, No. 220CV01374APGDJA, 2021 WL 3489713, at *3 (D. Nev. Aug. 6, 2021). At the time, the Supreme Court of Nevada had "not addressed whether it would recognize equitable subrogation in the context of two insurance companies and, if so, what an insurer claiming subrogation would have to prove." *Id.* at 2. The Supreme Court of Nevada has since decided *St. Paul* and *Aspen*. Accordingly, the Court relies on *Zurich* only to provide the elements of equitable subrogation and otherwise follows the Nevada Supreme Court's guidance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-00027-PSG-E | Date | August 4, 2023 |
|---|---|---|---|
| Title | North River Insurance Company v. James River Insurance Company | | |

3185274, at *2.  It follows that here, since Plaintiff has not shown that the $5 million settlement amount exceeded the $11 million combined policy limits, Plaintiff has not shown that Shelter Island suffered damages to state an equitable subrogation claim.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claim.  Since Plaintiff cannot plead additional facts that would show the underlying case settled for an amount in excess of the $11 million combined policy limits, amendment would be futile.  Therefore, the Court denies Plaintiff leave to amend.  *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, [d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.")

V.      Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to dismiss without leave to amend.


        **IT IS SO ORDERED.**