**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NORTH RIVER INSURANCE COMPANY, a New Jersey corporation,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>JAMES RIVER INSURANCE COMPANY, an Ohio corporation,<br><br>*Defendant-Appellee*. | No. 23-55757<br><br>D.C. No. 2:23-cv-00027-PSG-E<br><br>ORDER CERTIFYING A QUESTION TO THE SUPREME COURT OF NEVADA |

Filed August 28, 2024

Before: Richard A. Paez, Danielle J. Forrest, and Gabriel P. Sanchez, Circuit Judges.

Order

# SUMMARY[*]

### Certification Order / Nevada State Law

Pursuant to Nevada Rules of Appellate Procedure Rule 5, the panel certified the question set forth below to the Nevada Supreme Court:

> Under Nevada law, can an excess insurer state a claim for equitable subrogation against a primary insurer where the underlying lawsuit settled within the combined policy limits of the insurers?

# ORDER

Pursuant to Nevada Rules of Appellate Procedure Rule 5, we respectfully certify the question set forth below to the Nevada Supreme Court.  The answer to our certified question will "be determinative of the cause" pending before us.  Nev. R. App. P. 5(a).

This case involves an equitable subrogation claim brought by an excess insurer against a primary insurer.  The suit arises from a murder in a Las Vegas, Nevada apartment complex.  The victim's estate sued the owners of the complex for negligence and wrongful death.  The primary insurer rejected initial settlement demands that were at or within its policy limits, and the case ultimately settled for an

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

amount exceeding the primary insurer's policy limits, but within the combined limits of the two insurance policies. After paying the remainder of the settlement, the excess insurer sued the primary insurer in federal court in California, asserting an equitable subrogation claim and alleging that the primary insurer breached its duty to settle and the implied covenant of good faith and fair dealing.

To resolve this appeal, we must determine whether California or Nevada law applies. If the laws of the two states are the same, California law will presumptively apply, as the forum state. *See Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 920 (2001). If there is a material conflict between the laws of the two states, however, we will be required to undertake a choice-of-law analysis and ultimately apply the prevailing jurisdiction's law. *See Chen v. Los Angeles Truck Centers, LLC*, 7 Cal. 5th 862, 867–68 (2019). It is not clear to us, however, what the law of Nevada is here.

The central issue in this appeal, therefore, is whether Nevada law permits equitable subrogation between insurers in this context.

For the reasons we discuss below, we certify the following question:

> Under Nevada law, can an excess insurer state a claim for equitable subrogation against a primary insurer where the underlying lawsuit settled within the combined policy limits of the insurers?

We recognize that our phrasing of this question does not restrict the court's consideration of the issues involved and

that the court may rephrase the question as it sees fit. We agree to accept the court's answers.

I.

We briefly summarize the relevant facts. In 2017, Marcus Collins ("Collins") was murdered inside Shelter Island Apartments, an apartment complex in Las Vegas, Nevada. In 2019, Collins's estate sued Alhambra Place Partnership, LP dba Shelter Island Apartments ("Alhambra Place"), the owner, for negligence and wrongful death. Alhambra Place had a primary insurance policy with James River Insurance Company ("James River") for $1 million per covered occurrence, as well as an excess insurance policy with North River Insurance Company ("North River") for $10 million per occurrence.

As the primary insurer, James River defended the lawsuit against Alhambra Place. Between March 2019 and November 2021, James River rejected a number of settlement demands from Collins's estate, all at or below the $1 million policy limit. North River alleges that, at least in November 2021, James River's defense counsel had informed James River that the value of the lawsuit was greater than $1 million.

In August 2022, James River learned of another lawsuit against Alhambra Place involving a more recent murder at Shelter Island Apartments. That lawsuit settled for $11 million after the deposition of the owner of the apartment complex. That same month, Collins's estate increased its demand to $5 million. James River subsequently decided to settle, and in November 2022, the case settled for $5 million. James River contributed its full policy limit of $1 million, and North River contributed the remaining $4 million.

In January 2023, North River filed the present lawsuit against James River in the Central District of California. North River alleged that James River breached its duty to settle and the implied covenant of good faith and fair dealing.  North River asserted a claim of equitable subrogation, contending that had it not stepped in to cover the costs of the settlement, Alhambra Place would have possessed a cause of action against James River.  North River thus alleged that, under these circumstances, it had the right to step into the shoes of Alhambra Place as subrogee of that cause of action.

On August 4, 2023, the district court granted James River's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.  The court conducted a choice-of-law analysis under California's choice-of-law rules as the forum state.  Relying on two unpublished decisions from the Nevada Supreme Court, the district court concluded that Nevada law presented a material conflict with California law because Nevada did not allow an excess insurer to maintain a claim for equitable subrogation against a primary insurer when the underlying case settled within the insurers' combined policy limits.

## II.

Nevada permits certification of a state law question from a federal court where "there are involved in any proceeding . . . questions of law of [Nevada] which may be determinative of the cause then pending . . . and as to which it appears . . . there is no controlling precedent in the decisions of the Supreme Court or Court of Appeals of [Nevada.]"  Nev. R. App. P. 5(a).  "We invoke the certification process only after careful consideration and do

not do so lightly." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003). In deciding whether to certify a question of state law to a state supreme court, we consider "(1) whether the question presents important public policy ramifications yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) the spirit of comity and federalism." *Murray v. BEJ Mins., LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (cleaned up).

This case raises important policy ramifications implicating insurance companies, their underlying duties to make reasonable settlement decisions, and their ability to subrogate claims after the payment of settlement fees. An insurance company's motivations and interests may be influenced by its ability to bring a claim for equitable subrogation at a later point. *See* Restatement of Liability Insurance § 24 cmt. b (2019). And in the spirit and comity of federalism, we recognize that Nevada may have an interest in regulating its own insurance landscape. *See, e.g.*, *Cassirer v. Thyssen-Bornemisza Collection Found.*, 69 F.4th 554, 557 (9th Cir. 2023)

In this appeal, we must determine whether a material conflict exists between Nevada and California law, such that a choice-of-law analysis is required. *See Washington Mut. Bank,* 24 Cal. 4th at 919–20. Federal courts sitting in diversity presumptively apply the choice-of-law rules of the forum state, so California choice-of-law rules would apply here. *See First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015).

"The California Supreme Court has indicated that the governmental interest test is 'the appropriate general methodology for resolving choice-of-law questions' in

California." *Cassirer*, 69 F.4th at 560 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 83 (2010)).  Under California's governmental interest test, we first ask whether the relevant law of the two jurisdictions "is the same or different."  *Chen*, 7 Cal. 5th at 867 (cleaned up).  If the answer to this first question is that the laws of the two jurisdictions are the same, we do not need to proceed any further, as California law would apply.  *Washington Mut. Bank*, 24 Cal. at 920; *see Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Coop, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (holding that a conflict of law issue "only arises if differences in state law are material, that is, if they make a difference in [the] litigation").  If the answer is that the laws of the two jurisdictions are materially different, then we must proceed with the remainder of the choice-of-law analysis.  *See Chen*, 7 Cal. 5th at 867–68.

Thus, in order to resolve this case, we must determine whether there is a material difference between Nevada and California law.  We therefore need to ascertain whether Nevada law permits or prohibits equitable subrogation claims by an excess insurer against a primary insurer when the underlying settlement is within the insurers' combined policy limits.  California law permits such claims.  *See, e.g.*, *Ace Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 2 Cal. App. 5th 159, 183 (2016); *RLI Ins. Co. v. CAN Cas. of California*, 141 Cal. App. 4th 75, 80 (2016).  Under the current state of Nevada law, it is not clear whether Nevada recognizes a claim for equitable subrogation in these circumstances.

Nevada generally recognizes the doctrine of equitable subrogation.  *See In re Fontainebleau Las Vegas Holdings*, 128 Nev. 556, 572 n.8 (2012) ("This court has recognized

the doctrine of equitable subrogation in a variety of situations."). And, where Nevada law is less developed on an issue, such as equitable subrogation, Nevada courts have looked to the law of other states, including California. *See, e.g.*, *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996) ("Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance. In accordance with this practice, we have looked to the law of other states when necessary to supplement Nevada's law on equitable subrogation.") (internal citations omitted); *Zurich Am Ins. Co. v. Aspen Specialty Ins. Co.*, 2021 WL 3489713 at *3 (D. Nev. Aug. 6, 2021) ("[The court] look[s] to California law for guidance because the Supreme Court of Nevada often does that when deciding an issue of first impression.").

The district court determined, however, that Nevada law diverged from California law here. The court concluded that two unpublished decisions from the Nevada Supreme Court prohibited an excess insurer from bringing an equitable subrogation claim against a primary insurer when the underlying settlement fell within the insurers' collective policy limits. The first case, *St. Paul Fire & Marine Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 521 P.3d 418, 2022 WL 17543613 (Nev. 2022), held that an excess insurer could not bring an equitable subrogation claim against another, equal-level excess insurer.

In *St Paul*, four insurers—two primary and two excess—were involved in settling the underlying lawsuit regarding the insured properties. 2022 WL 17543613 at *1. After a jury verdict, but before the punitive damages stage, the four insurers agreed to settle the case for an amount within their collective policy limits. *Id.* One of the excess insurers then sued the other excess insurer, alleging a claim for equitable

subrogation. *Id.* The Nevada Supreme Court reasoned that, because the settlement fell within the total policy limits, the insured "did not suffer damages to subrogate," and thus no claim for equitable subrogation could proceed. *Id.* at *1–2.

In a subsequent case arising out of the same underlying incident, the Nevada Supreme Court again ruled that the same excess insurer could not bring an equitable subrogation claim against a primary insurer. *See Aspen Specialty Ins. Co v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 528 P.3d 287, 2023 WL 3185274 (Nev. 2023). There, the same excess insurer plaintiff from *St. Paul* sued a primary insurer. *Id.* at *2. The court held that because this case arose out of a related action, it was bound by *St. Paul*. *Id.* The court again noted that "the four insurers settled the litigation . . . without exceeding the collective policy limits," and thus held that there were "no damages which [the excess insurer] can acquire." *Id.*

Importantly, however, these cases were unpublished. Under Nevada Rule of Appellate Procedure 36(c), the Nevada Supreme Court can "decide cases by either published or unpublished disposition." If the court decides not to publish, the "unpublished disposition, while publicly available, does not establish *mandatory precedent* except in a subsequent stage of a case in which the unpublished disposition was entered, in a related case, or [to establish issue or claim preclusion]." Nev. R. App. P. 36(c)(2) (emphasis added). However, a "party may cite for its persuasive value, if any, an unpublished decision[.]" Nev. R. App. P. 36(c)(3). *St. Paul* and *Aspen* are thus not "mandatory precedent" and have no compulsory binding effect on this case.

Additionally, neither case was decided by the full Nevada Supreme Court: *St. Paul* was decided by a six-justice court, *see* 2022 WL 17543613 at *5 n.4, and *Aspen* involved a petition for a writ of mandamus that was decided by a three-justice court, *see* 2023 WL 3185274. Further, there are some meaningful differences between those cases and the one here. In the underlying litigation there, the insurers negotiated a settlement after a jury verdict but before any award of punitive damages, whereas here, the underlying case never went to trial. And the present appeal arose from the grant of a Rule 12(b)(6) motion to dismiss, before any discovery was conducted, whereas *St. Paul* arose from the grant of summary judgment, after the close of discovery.

Left with no clearly controlling precedent, we believe that the Nevada Supreme Court should be the first to determine whether equitable subrogation is permitted between two insurers in this context. Certification is thus appropriate. *See* Nev. R. App. P. 5(a). We respectfully request that the court answer the question presented in this order.

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we include here the designation of the parties who would be appellant and appellee in the Nevada Supreme Court, as well as the names and addresses of counsel.

The names and addresses of counsel are:

> *For Plaintiff-Appellant North River Insurance Company*: Sabrina H. Strong and Zoheb P. Noorani, O'Melveny & Myers, LLP, 400 South Hope Street, Los Angeles, CA 90071.

*For Defendant-Appellee James River Insurance Company*: Jeffrey V. Commisso, Benjamin D. Brooks, and John T. Brooks, Sheppard, Mullin, Richter & Hampton, LLP, 501 West Broadway, 18th Floor, San Diego, CA 92101.

### III.

The Clerk of Court is hereby directed to transmit to the Nevada Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record. Submission of this case is withdrawn, and the case will be submitted following receipt of the Nevada Supreme Court's opinion on the certified question or notification that it declines to answer the certified question. The Clerk is directed to administratively close this docket pending further order. The parties shall notify the Clerk of this court within one week after the Nevada Supreme Court accepts or rejects certification. In the event the Nevada Supreme Court grants certification, the parties shall notify the Clerk within one week after the court renders its opinion.

It is so **ORDERED**.

/s/ Danielle J. Forrest

Danielle J. Forrest,
Circuit Judge, Presiding